## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 22-CR-019-JFH

TYKWAN MARKWA DEVON MCGEE,

        Defendant.

## <u>OPINION AND ORDER</u>

Before the Court are numerous pretrial motions and objections filed by both the United States of America ("Government") and Defendant Tykwan Markwa Devon McGee ("Defendant"). Defendant is slated for jury trial to begin on February 5, 2024 as to Count One: Aggravated Sexual Abuse of a Child in Indian Country, in violation of 18 U.S.C. §§ 2241(c), 2246(2)(C), 1151, and 1153. Dkt. Nos. 17, 149, 158. Defendant is slated for jury trial to begin on March 4, 2024 as to Count Two: Aggravated Sexual Abuse in Indian Country, in violation of 18 U.S.C. §§ 2241(a), 2246(2)(A), 1151, and 1153. *Id*.

The Government filed two objections and a motion in limine: (1) an objection to Defendant's notices of intent to impeach Government witnesses under Federal Rules of Evidence 608(b)(1) and 609 [Dkt. No. 94][1]; (2) an objection to Defendant's notice of expert witness [Dkt. No. 111]; and (3) a motion in limine to preclude evidence of sufficiency of blood quantum evidence [Dkt. No. 111]. Defendant filed four motions and an objection: (1) a motion in limine [Dkt. No. 107]; (2) a motion in limine to preclude victim forensic interviews [Dkt. No. 108]; (3) a motion in limine to preclude victim statements to a SANE nurse [Dkt. No. 109]; (4) a motion to

---

[1] The Court notes that while this filing is titled a "response," the Court construes it as an objection.

dismiss the indictment; and (5) an objection to Government expert witness testimony [Dkt. No. 106]. The Court will address all pending motions and objections in this Order.

## FACTUAL BACKGROUND

### I.      Charged Conduct

This action arises out of the alleged sexual assaults of S.R. and D.R. At the time of the charged conduct, Defendant and S.R. were in an "on-going tumultuous relationship." Dkt. No. 90 at 2. D.R. is S.R.'s child and was eight years old at the time of the charged conduct. Dkt. No. 115 at 1.

On January 11, 2022, S.R. asked Defendant to watch her children, including D.R. *Id.* Defendant agreed and stayed that night at S.R.'s apartment and continued to watch the children into the following day. *Id.* On January 12, 2022, upon waking up from a nap in her apartment living room, S.R. entered her bedroom where she observed Defendant "standing behind [D.R.] with his penis exposed." *Id.* S.R. described seeing D.R. lying face down on the bed "with her pants and underwear pulled down below her butt and her feet hanging off the end of the bed. [Defendant] was standing behind D.R. without a shirt on, with a blanket draped over his back, and with his boxers down around his knees. [ D]efendant was pulling D.R.'s pants further down when S.R. entered the bedroom." Dkt. No. 115 at 1-2. When confronted by S.R., Defendant fled the apartment, jumping off the second floor balcony. *Id.* at 2.

The Admore Police Department responded to S.R.'s apartment. *Id.* Upon the advice of law enforcement, S.R. took D.R. to the emergency room for an initial medical clearance. Later that night, law enforcement arranged for a forensic interview and an examination by a Sexual Assault Nurse Examiner ("SANE") at Sara's Project, a victim advocacy center in Ardmore, Oklahoma. Dkt. No. 109 at 2. A law enforcement officer was present at Sara's Project during the

forensic interview. *Id*. D.R. identified Defendant as her abuser to both the forensic interviewer and the SANE nurse. Dkt. No. 115 at 2.

The following morning, S.R. was interviewed by FBI Special Agent Kum regarding the incident with D.R. Dkt. No. 115 at 3. During the interview, S.R. recounted an unrelated incident in which Defendant sexually abused S.R. in the summer of 2021. *Id*. S.R. recounted that she allowed Defendant to shower at her apartment while her children were not home. *Id*. After his shower, Defendant began touching S.R. and undressing her, despite her saying no. *Id*. When S.R. attempted to physically stop Defendant, "he choked her to the point that she felt she was going to pass out." *Id*. When S.R. realized that she was losing consciousness, she stopped resisting and Defendant proceeded to vaginally rape her. Dkt. No. 115 at 3.

## II.    February 25, 2014 Conduct

On February 25, 2014, S.R., Defendant, and another individual exited a Walmart store with a 50" television that had not been paid for and drove off with the television in a blue Jeep Cherokee. Dkt. No. 91 at 2. The vehicle's registration information led officers to an apartment complex where the blue Jeep was observed in the parking lot with three individuals inside, including S.R. in the driver's seat and Defendant in the back seat. *Id*. at 3. When officers approached the vehicle, Defendant fled on foot. *Id*. While other officers searched for Defendant, S.R. was questioned by law enforcement. *Id*. During this interview, S.R. told law enforcement that she did not know Defendant and that she had "picked him up around McDonalds and gave him a ride." Dkt. No. 91 at 3. She further stated that she only knew him by the name "P-Money" and that she had not recently been to Walmart. *Id*. S.R. also specifically denied having a stolen television. *Id*. Later, after Defendant was apprehended, S.R. admitted that she knew Defendant and that he was her

boyfriend.  *Id*.  The television was later recovered in the apartment complex and  S.R. was arrested on obstruction charges.  Dkt. No. 91 at 3.

On February 26, 2014, a complaint was filed against S.R. charging her with knowingly concealing stolen property in Carter County District Court Case No. CF-2014-107.  Dkt. No. 90 at 2.  With assistance of counsel, S.R. entered a plea of guilty pursuant to a plea agreement.  *Id*. At the sentencing hearing, the judge entered an order deferring imposition of judgment and sentence for a period of two years.  *Id*.

## AUTHORITY AND ANALYSIS

### I.  Notices and Motion Regarding the February 25, 2014 Conduct [Dkt. Nos. 90, 91, 107]

Defendant filed a Notice of Intent to Impeach Government Witness S.R., Pursuant to Fed. R. Evid. 609 [Dkt. No. 90] and a Notice of Intent to Cross-Examine Government Witness S.R. Pursuant to Fed. R. Evid. 608(b)(1) [Dkt. No. 91].  Both notices indicate that Defendant intends to attack S.R.'s character for truthfulness based upon her involvement in the February 25, 2014 conduct and her resulting felony conviction.  Dkt. Nos. 90 and 91.

The Government filed a response objecting to the notices.  Dkt. No. 94.  The Government argued that because S.R.'s sentence was deferred, it does not constitute a conviction and, therefore, the February 25, 2014 conduct is not admissible under Federal Rules of Evidence 608 and 609. *Id*.  However, should the Court allow cross-examination of S.R. relating to the February 25, 2014 conduct, the Government argued that it would open the door to Defendant's involvement in the conduct as well.  *Id*.  Specifically, the Government argues that should the Court find that S.R.'s prior felony conviction and related conduct are admissible, the Government should be permitted to rehabilitate S.R. by eliciting Defendant's involvement in the conduct.  *Id*.

Defendant, after seeking leave from the Court, filed a reply arguing that his involvement in the February 25, 2014 conduct is not relevant for purposes of rehabilitation and, further, that introduction of Defendant's involvement in this manner would circumvent the Court's previous order on the Government's 404(b) notice, as well as the basic principles of Fed. R. Evid. 608 and 609. Dkt. No. 97. Defendant also filed a motion in limine asking the Court to preclude the Government from introducing Defendant's involvement in the February 25, 2014 conduct. Dkt. No. 107.

### a. Rule 609

Rule 609 sets out various parameters for impeachment by evidence of a criminal conviction. Fed. R. Evid. 609. Some of Rule 609's limits involve timeframes and the effect of pardons, annulments, or rehabilitation. *See id.* Here, the Government argues that because S.R.'s sentence was deferred, there was no conviction in her case and, therefore, evidence of the February 25, 2014 charge is inadmissible under Fed. R. Evid. 609. *Id.* at 2.

The Tenth Circuit has held that a guilty plea and deferred judgment under 22 O.S. § 991c, could be treated as a conviction under federal law and used for impeachment purposes, even though it was not a "conviction" under Oklahoma law. *United States v. Turner*, 497 F.2d 406, 407-08 (10th Cir. 1974). However, the Tenth Circuit subsequently declined to decide whether *Turner*, which predated the effective date of modern rules of evidence, was controlling in cases decided under the current rules. *See United States v. Sutton*, 1998 WL 67318, at *2 (10th Cir. Feb. 18, 1998) (unpublished). The Court notes that the *Turner* decision has not been widely followed and that Rule 609 has been amended multiple times since the *Turner* holding. Fed. R. Evid. 609. The Court also recognizes that much can happen following the entry of a guilty plea but before final judgment has been entered by the court. Indeed, a guilty plea can be withdrawn, modified, or

otherwise nullified by some subsequent event.  The Court finds that the provisional nature of a guilty plea seems to run contrary to the definitive language of Rule 609 which applies only to criminal *convictions*.  It likewise seems to run contrary to the policy considerations which underlie Rule 609, such as putting defendants and witnesses on notice as to what types of criminal records may be used against them for purposes of impeachment.  For these reasons, the Court finds that S.R.'s plea of guilty related to the February 25, 2014 conduct does not constitute a conviction for purposes of Fed. R. Evid. 609 and the Court's analysis ends here.  Therefore, the Government's objection [Dkt. No. 94] in this regard is SUSTAINED.

### b.  Rule 608

In addition to her conviction, Defendant seeks to cross-examine S.R. regarding specific instances related to the February 25, 2014 conduct, which Defendant argues is probative of her character for untruthfulness.  Dkt. No. 91.  Defendant points to three statements S.R. made to law enforcement that were untrue:  1) that she did not know Defendant; 2) that she had not recently been to Walmart; and 3) that she did not have a stolen television.  *Id*. at 4.

Federal Rule of Evidence 608 provides two avenues to attack or support a witness' character for truthfulness:  reputation or opinion evidence and specific instances of conduct.  Fed. R. Evid. 608.  Specific instances may be proven by very limited means, with a complete prohibition (subject to Rule 609) on using extrinsic evidence to prove them.  *Id.* at (b).  "[T]he reason for excluding such extrinsic evidence is to avoid mini-trials that may consume a disproportionate amount of time and confuse the issues."  *United States v. A.S.*, 939 F.3d 1063, 1071 (10th Cir. 2019) (quoting *United States v. Velarde*, 485 F.3d 553, 561 (10th Cir. 2007)).  Narrow questioning is allowable if the specific instance in question is probative of the witness' character for truthfulness or untruthfulness.  Fed. R. Evid. 608(b).

However, whether to allow such testimony is left to the discretion of the court. Fed. R. Evid. 608, advisory committee notes. The statements at issue here were made nearly ten years ago. Although remoteness in time is not an express consideration under Rule 608, the Court finds, in its discretion, that the remoteness in time here is problematic. The Court likewise finds that Defendant's involvement in the February 25, 2014 conduct is problematic. While Defendant's questioning could be limited and S.R. could be admonished prior to cross-examination that she may not indicate to the jury Defendant's involvement in the February 25, 2014 conduct, the Court nonetheless finds that this line of questioning is troublesome considering the Court's previous ruling regarding the inadmissibility of Defendant's involvement in the February 25, 2014 conduct [Dkt. No. 88], and would ultimately confuse the issues. Accordingly, the Government's objection [Dkt. No. 94] to Defendant's proposed cross-examination of S.R. under Fed. R. Evid. 608 is SUSTAINED.

### c. Rehabilitation

Finally, the Government argues that should the Court find that S.R.'s prior felony conviction and related conduct are admissible, the Government should be permitted to rehabilitate S.R. by eliciting testimony regarding Defendant's involvement in the conduct. Dkt. No. 94 at 2. Based on the Court's rulings above, the Government's request to rehabilitate S.R. by eliciting testimony regarding Defendant's involvement in the February 25, 2014 conduct [*see* Dkt. No. 94] is DENIED as moot.

### d. Defendant's Motion in Limine [Dkt. No. 107]

Finally, Defendant filed a motion in limine asking the Court to preclude the Government from introducing evidence of Defendant's involvement in the February 25, 2014 conduct for purposes of rehabilitating S.R. under Fed. R. Evid. 608 and 609. Dkt. No. 107. The Government

filed a response in opposition. Dkt. No. 113. Both the motion in limine and the response advance arguments already asserted in the parties' briefing on Defendant's Rule 608 and 609 notices. Based on the Court's rulings above, Defendant's motion in limine [Dkt. No. 107] is GRANTED.

## II.   Defendant's Motions in Limine regarding S.R. and D.R. Statements [Dkt. Nos. 108 and 109]

Defendant filed two motions in limine. The first motion seeks to preclude introduction into evidence of Defendant's prior incarceration and other bad acts as alleged in S.R.'s law enforcement interview and D.R.'s forensic interview. Dkt. No. 108. The second motion seeks to preclude introduction into evidence of statements made by D.R. to the forensic interviewer and to the SANE nurse.[2] Dkt. No. 109. The Government filed a single response addressing both motions. Dkt. No. 115. Upon review, there are three categories of statements at issue: (1) D.R.'s statements to the forensic interviewer; (2) S.R.'s statements to law enforcement; and (3) D.R.'s statements to the SANE nurse. The Court will address each category of statements in turn.

### a.   Motion in limine standard

"The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to the issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F.Supp.2d 1201, 1208 (D. Kan. 2008) *aff'd*, 402 F. App'x 337 (10th Cir. 2010) (quotation and citation omitted). In many instances, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context. *Id*. "A court will generally not grant a motion in limine unless the moving party

---

[2] The Court notes that the first page of this motion states that Defendant seeks to preclude *S*.R.'s statements. Dkt. No. 109 at 1. However, upon review of the motion in its entirety, the Court believes that this is a typographical error and that Defendant seeks to preclude *D*.R.'s statements as it pertains to this motion.

meets its burden of showing that the evidence in question is clearly inadmissible on all potential grounds." *Tulsa Zoo Mgmt., Inc. v. Peckham Guyton Albers & Viets, Inc*., No. 17-CV-644, 2019 WL 1562147, at *1 (N.D. Okla. Mar. 5, 2019) (citation and quotation omitted).

Evidence is relevant if it has any tendency to make a fact more or less probable and the fact is of consequence in determining the action. Fed. R. Evid. 401. Although relevant evidence is generally admissible, it may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. "Evidence is not unfairly prejudicial simply because it is damaging to [a party's] case." *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quotation omitted). Rather, it must have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*. (quoting Fed. R. Evid. 403 advisory committee's note).

### b. D.R.'s statements to the forensic interviewer

Defendant argues that D.R.'s statements made to the forensic interviewer are inadmissible because the interview was arranged by law enforcement, was testimonial, and was conducted in anticipation of prosecution. Dkt. No. 109 at 3. Defendant further highlights specific statements made in D.R.'s interview that he seeks to preclude. *See* Dkt. No. 108 at 3. In its response, the Government agrees that statements made by D.R. during her forensic interview do not fit within any exception to the rule against hearsay and, therefore, the Government states that it does not intend to introduce any portion of D.R.'s forensic interview at this time.[3] Dkt. No. 115.

---

[3] The Court reminds the parties of Local Criminal Rule 12.1(B), which states that every motion shall contain a statement as to whether or not opposing counsel objects to the motion. E.D. Okla. Civ. R. 12.1(B). This rule requires the parties to confer before each motion is filed to determine whether the motion is necessary. If Defendant had conferred with the Government prior to the filing of this motion, it would have known that filing this portion of the motion was unnecessary.

Accordingly, Defendant's motion in limine regarding D.R.'s statements to the forensic interviewer [Dkt. No. 109] is DENIED as moot.

### c.  S.R.'s statements to law enforcement

Defendant seeks to preclude evidence of other bad acts as alleged by S.R. in her interview with law enforcement, including instances of  Defendant flattening her tires, punching her in the face, choking her, and breaking into her home.  Dkt. No. 108 at 2-3.  Defendant also seeks to exclude evidence of instances of sexual contact between Defendant and S.R. wherein S.R. did not desire to engage in sexual activity but did not communicate her lack of consent to Defendant.  *Id*. at 2.  Finally, Defendant seeks to preclude evidence that Defendant committed the alleged sexual abuse shortly after being "released from jail."  *Id*. at 3.

Defendant acknowledges that the Court has already ruled "that some of these acts are not admissible under Fed. R. Evid. 404(b)."  *Id*.  Indeed, the Court ruled that "evidence that Defendant slashed S.R.'s tires and punched S.R. in the face" as described in the Government's Notice of Intent to Admit Evidence of Other Crimes, Wrongs, or Acts [Dkt. No. 80] was inadmissible.  Dkt. No. 88.  The Court also ruled that evidence of Defendant's twelve (12) prior criminal cases from 2014 to 2021 were inadmissible.  *Id*.  In its response, the Government acknowledges the Court's ruling and confirms that it does not intend to introduce the specific evidence of S.R.'s statements to law enforcement as outlined in Defendant's motion in limine [Dkt. No. 108].  It is unclear why Defendant is again asking the Court to exclude this evidence.

Because the Court has already issued a ruling finding evidence of Defendant flattening S.R.'s tires, punching S.R. in the face, and Defendant's previous criminal cases inadmissible, this portion of Defendant's motion in limine is DENIED as moot.  Further, because the Government

10

states that it does not intend to introduce the specific instances outlined in Defendant's motion [Dkt. No. 108], this portion of Defendant's motion in limine is also DENIED as moot.

In its response, the Government indicates that it does, however, intend to introduce "some evidence of previous domestic violence [as] necessary to explain the nature of the relationship between S.R. and [Defendant]." Dkt. No. 115 at 5. In doing so, the Government states that it "will not seek to admit specific prior bad acts, but instead will seek to illicit testimony about the general nature of S.R.'s relationship with [Defendant]." *Id*. Defendant concedes that "general testimony that S.R. and [Defendant] were in an abusive and tumultuous relationship" would be permissible to explain the nature of the relationship between S.R. and Defendant. Dkt. No. 124. The Court agrees. General testimony regarding the nature of the relationship between S.R. and Defendant is admissible.[4] However, specific instances of Defendant's prior bad acts, including instances of hitting, slapping, and punching S.R. are inadmissible consistent with the Court's prior ruling. *See* Dkt. No. 88.

Finally, the Government's response sets forth specific evidence that it states should be admitted res gestae. Dkt. No. 115 at 7. This evidence includes:

1.      [Defendant] removing the clothing of D.R. prior to his sexual abuse of her.
2       [Defendant] touching D.R.'s vagina over her clothing, prior to removing her pants and underwear.
3.      [Defendant] exposing his penis to D.R.
4.      [Defendant] fleeing from police intervention by jumping off the second-floor balcony of S.R.'s apartment.

---

[4] Following the Court's Order severing the trial as to Counts One and Two [Dkt. No. 158], the Court notes that testimony regarding the nature of the relationship between S.R. and Defendant is relevant and admissible only as to Count Two.

*Id.*[5]  The Court notes that the Government discusses this evidence for the first time in its response. It is further noted that Defendant does not address this evidence in its reply.  However, the Court agrees with the Government that the evidence immediately preceding and immediately following Defendant's alleged sexual abuse of D.R. is admissible as res gestae evidence.

Res gestae, or intrinsic evidence, is evidence that is inextricably intertwined with the charged conduct, meaning it is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015) (quoting *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009)).  Contrastingly, evidence is "extrinsic" when it "is extraneous and is not connected or blended with the factual circumstances of the charged offense." *Id.*  Here, the evidence describes actions taken immediately preceding—if not simultaneously to—the alleged sexual abuse of D.R. Undoubtedly, this evidence is inextricably intertwined with the charged conduct.

Further, evidence that Defendant fled the apartment immediately following the charged conduct is admissible as evidence of flight.  The Tenth Circuit has long held that evidence of flight can be offered as proof of the consciousness of guilt.  *United States v. Martinez*, 681 F.2d 1248, 1256, (10th Cir. 1982) ("It is universally conceded today that the fact of an accused's flight . . . [is] admissible as evidence of consciousness of guilt, and thus of guilt itself.") (internal citations omitted)).  "[F]light evidence carries with it a strong presumption of admissibility." *Id.*  Here, Defendant fled the apartment immediately after S.R. walked in on him allegedly sexually abusing D.R., jumping off the second floor balcony of S.R.'s apartment.  Under these circumstances, the

[5]  The Government also lists "[p]revious instances of the defendant hitting, slapping, and punching S.R. during arguments."  However, the Court has already determined that specific instances of Defendant's prior bad acts, including instances of hitting, slapping, and punching S.R. are inadmissible and, therefore, declines to address this issue for a third time.

Court finds that Defendant's flight is probative of consciousness of guilt and, therefore, is admissible.

Finally, if the Court determines evidence is intrinsic, the evidence "remains subject to the requirement of FRE 403 that its probative value is not substantially outweighed by the danger of unfair prejudice." *Irving*, 665 F.3d at 1212.  "Evidence is not unfairly prejudicial simply because it is damaging to [a party's] case." *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quotation omitted).  Rather, it must have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*.  In other words, evidence is unfairly prejudicial if it "tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocense [sic] of the crime charged." *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010) (emphasis in original) (quotation omitted).  Defendant's conduct immediately preceding and immediately following the alleged sexual abuse is inextricably intertwined with, not wholly separate from, the crimes charged and, therefore, will not adversely affect the jury's attitude toward Defendant wholly apart from its judgment related to the charged conduct.  Rule 403 is satisfied.

### d.  D.R.'s statement to the SANE nurse

Defendant argues that D.R.'s statement to the SANE nurse identifying Defendant as her abuser is inadmissible because it does not fall within the medical diagnosis and treatment exception to the rule against hearsay.  Dkt. No. 109 at 4.  Specifically, Defendant argues that identification of Defendant as D.R.'s abuser falls outside the exception because:  1) Defendant's identification was not pertinent to maintaining a safe home environment for D.R.; 2) the SANE examination was arranged by law enforcement; and 3) the SANE examination was performed after D.R. had been to the emergency room and had heard S.R. comment about Defendant's culpability.  *Id*.  In its

response, the Government argues D.R.'s identification of Defendant during her SANE examination is relevant to her diagnosis and treatment and, therefore, is admissible under the medical diagnosis and treatment exception to the rule against hearsay.  Dkt. No. 115 at 4.

Although hearsay testimony is generally inadmissible, the Federal Rules of Evidence contain a number of exceptions to the rule against hearsay.  *See* Fed. R. Evid. 802, 803, 804.  One of these exceptions, Rule 803(4), makes admissible "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."  Fed. R. Evid. 803(4).  "This exception is premised on the theory that a patient's statements to her physician are likely to be particularly reliable because the patient has a self-interested motive to be truthful:  She knows that the efficacy of her medical treatment depends upon the accuracy of the information she provides to the doctor."  *United States v. Tome*, 61 F.3d 1446, 1449 (10th Cir. 1995) (citing *United States v. Joe*, 8 F.3d 1488, 1493 (10th Cir.1993), *cert. denied*, 510 U.S. 1184 (1994).  Stated differently, "a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility."  *Id*. at 1449-50 (internal quotations omitted).

A declarant's statement to a physician identifying the person responsible for the declarant's injuries, however, is "ordinarily inadmissible under Rule 803(4) because the assailant's identity is usually unnecessary either for accurate diagnosis or effective treatment."  *Tome*, 61 F.3d at 1450 (citing *Joe*, 8 F.3d at 1494).  But the identity of a sexual abuser who is a member of the victim's family or household "is admissible under Rule 803(4) where the abuser has such an intimate

relationship with the victim that the abuser's identity becomes reasonably pertinent to the victim's proper treatment." *Id.* (citing *Joe*, 8 F.3d at 1495).

The night before D.R.'s alleged abuse, Defendant had "stayed the night" at S.R. and D.R.'s apartment for the purpose of watching S.R.'s children. Dkt. No. 115 at 1. This indicates that Defendant was not technically a member of D.R.'s household at that time. However, Defendant and S.R. were in an ongoing relationship and had two other children together. *Id.* Although the briefing is unclear regarding the exact relationship between Defendant and D.R., it appears that D.R. referred to Defendant as her "dad" during her forensic interview and had at least some type of familial relationship with Defendant, both in the context of her mother's boyfriend and as her occasional caretaker. *See United States v. Pacheco*, 154 F.3d 1236, 1241 (10th Cir. 1998) (holding that the abuser's "intermittent relationship" with the victim's mother and the abuser's recurrent overnight stays at the victim's home were sufficient to make the abuser's identity reasonably pertinent to the victim's proper treatment). Therefore, the Court finds that, at the time of the charged conduct, Defendant's relationship to D.R. was such that Defendant's identity was reasonably pertinent to D.R.'s proper treatment. Accordingly, D.R.'s statement to her SANE nurse identifying Defendant as her abuser falls within the medical diagnosis and treatment exception to the rule against hearsay under Fed. R. Evid. 803(4).

Defendant's other arguments also fail. First, the fact that law enforcement arranged for the SANE examination does not invalidate its purpose for medical treatment. In fact, law enforcement officers frequently initiate the involvement of a SANE nurse where they are a victim's first contact after a sexual assault. Undoubtedly, "there is both a medical and investigatory function in almost every interaction with an alleged sexual assault victim." *Plater v. Harpe*, No. CIV-21-1092-HE, 2023 WL 3491048, at *8 (W.D. Okla. Apr. 6, 2023), *report and*

*recommendation adopted*, No. CIV-21-1092-HE, 2023 WL 3486989 (W.D. Okla. May 16, 2023) (internal citation omitted).  However, SANE nurses are specially trained to carry out this dual role. *Id*.  Law enforcement's involvement as described by Defendant is not improper and does not take D.R.'s statement to the SANE nurse outside the medical diagnosis and treatment exception to the rule against hearsay.

It is also of no consequence that D.R. was seen in the emergency room prior to her SANE examination.  Defendant appears to argue that because D.R. had already received medical care from the emergency room, her SANE examination could not have been for medical purposes. However, many sexual assault victims are first admitted to the emergency room to focus on pain management and immediate treatment of other injuries prior to receiving a SANE examination. Further, SANE nurses are specifically trained to treat sexual assault injuries, which may not be properly addressed in an emergency room setting.  *See e.g., Thompson v. Okla*., 438 P.3d 373, 375 (Okla. Crim. App. 2019) (SANE examination postponed so victim could first receive emergency room pain management treatment).  This argument fails.

Next, Defendant argues that D.R.'s identification of Defendant to the SANE nurse is inadmissible because at the time of the examination, D.R. "was aware that S.R. had called the police about [Defendant]" and had been told by S.R. that "she was going to make sure that [Defendant] would 'never be a part of her or her sisters' lives again.'"  Dkt. No. 109 at 4-5. Therefore, Defendant argues that D.R. likely identified Defendant as her abuser not for the "purpose of medical treatment and diagnosis, but rather for the purpose of getting [Defendant] into trouble with the police."  *Id*. at 5.  Regardless of whether D.R. believed Defendant would be prosecuted for his actions, because of Defendant's relationship with D.R., as explained above, his identity was pertinent to the SANE examination to properly treat D.R.  *Tome*, 61 F.3d at 1450;

*Joe*, 8 F.3d at 1495.   For this reason, D.R.'s knowledge regarding Defendant's potential punishment is not enough to take this outside the medical diagnosis and treatment exception to the rule against hearsay.

Finally, Defendant argues that D.R.'s statement to the SANE nurse should be precluded under Fed. R. Evid. 403.   Dkt. No. 109 at 5.   Specifically, Defendant argues that the relevance of the statement "is substantially outweighed by the danger of unfair prejudice, misleading the jury, confusing the issues, and other Rule 403 concerns."   *Id*.   The Court is not convinced.   Defendant is charged in this matter with sexually abusing D.R.   D.R.'s identification of Defendant as her abuser is highly relevant.   Further, "[e]vidence is not unfairly prejudicial simply because it is damaging to an opponent's case."   *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003).   While D.R.'s identification of Defendant as her abuser is obviously damaging to Defendant's case, he fails to demonstrate how it rises to the level of suggesting decision on an improper basis.   Likewise, Defendant has failed to show how D.R.'s statement would mislead the jury, confuse the issues, or touch upon any other "Rule 403 concerns."   For these reasons, Defendant's motion in limine regarding D.R.'s statement identifying Defendant as her abuser during her SANE examination [Dkt. No. 109] is DENIED.

## III.   Defendant's Motion to Dismiss Indictment [Dkt. No. 110]

Defendant moves to dismiss the indictment arguing that "because the federal jurisdiction is premised on a race-based classification and subjects [Defendant] to mandatory-minimum penalties that are greater than he would face under Oklahoma law," the indictment violates his Fifth Amendment right to equal protection.   Dkt. No. 110.   In other words, Defendant argues that this Court lacks jurisdiction because there is an impermissible race-based classification underlying 18 U.S.C. § 1153.   *Id*. at 2.   Defendant concedes that his argument runs contradictory to well-

17

established Supreme Court precedent holding that the Major Crimes Act is not based on impermissible racial classifications. *United States v. Antelope*, 430 U.S. 641, 646-47 (1977). Because Defendant's argument is admittedly foreclosed, Defendant's Motion to Dismiss Indictment [Dkt. No. 110] is DENIED.

## IV.   Experts

### a.   Defendant's Objection to Dr. Beeson's Testimony [Dkt. No. 106]

Defendant filed an objection to the Government's notice of intent to offer expert witness Dr. Christine Beeson ("Dr. Beeson"). Dkt. No. 106. Specifically, Defendant objects to the sufficiency of the notice itself and also argues that Dr. Beeson's testimony, if allowed, would be cumulative of the testimony of Nurse Sarah Taylor, the nurse who performed D.R.'s SANE examination. *Id*. at 1-2. The Government filed a response in opposition. Dkt. No. 114.

First, Defendant contends that the Government's expert notice for Dr. Beeson is not specific enough to provide the defense with notice of Dr. Beeson's proposed testimony. Dkt. No. 106 at 3. In particular, Defendant complains that the notice does not provide a "complete statement" of Dr. Beeson's opinions or information regarding the bases and reasons for the opinions. *Id*.

Under Federal Rule of Criminal Procedure 16, the Government must provide a criminal defendant with a written summary of any expert testimony it intends to use. Fed. R. Crim. P. 16(a)(1)(G). The notice must provide a complete statement of all opinions that the Government will elicit from the expert, as well as the basis and reason for those opinions. *Id*. Fed. R. Crim. P. 16 is designed to give opposing counsel notice that expert testimony will be presented, permitting "more complete pretrial preparation" by opposing counsel, such as lining up an opposing expert,

preparing for cross-examination, or challenging admissibility on *Daubert* or other grounds. *See* Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment.

The Government's notice here is clear with regard to the general nature of the testimony Dr. Beeson will offer. Dkt. No. 102 at 2. Dr. Beeson will testify to all aspects of her knowledge in the area of child sexual abuse and child sexual abuse examinations based upon her education, background, training, and experience. *Id*. at 1-2. This will include how child sexual abuse examinations are conducted and the possible scope of findings, and/or the lack of physical findings that are routinely discovered, the use of statements made during examinations, possible diagnoses, and the anatomy of the female genitalia as it relates to child sexual abuse and examinations. *Id*. at 2.

The Court finds that the Government's expert notice for Dr. Beeson complies with the requirements of Fed. R. Crim. P. 16. The notice specifies the topics on which Dr. Beeson will testify and indicates that Dr. Beeson will testify as to these topics based upon her education, background, training, and experience. Dkt. No. 102 at 2. The Government provided a copy of Dr. Beeson's curriculum vitae listing her education, background, training, and experience. Dkt. No. 102-1. Additionally, the Government provided a list of all cases over the previous four years in which Dr. Beeson has testified as an expert witness. *Id*. The Government has complied with the requirements of Fed. R. Crim. P. 16.

Next, Defendant objects to Dr. Beeson's testimony because it will be "cumulative of testimony that Nurse Taylor will provide." Dkt. No. 106 at 2. Specifically, Defendant argues that Nurse Taylor is the "best witness" to provide both factual testimony regarding the SANE examination in this case, as well as expert testimony regarding child sexual abuse examinations in general. *Id*. at 6. Defendant contends that Nurse Taylor will necessarily have to testify regarding

child sexual abuse examinations in general in order to properly lay a foundation for her testimony as to the SANE examination in this case.  The Court disagrees.

While a proper foundation will undoubtedly be required, this does not mean that Dr. Beeson and Nurse Taylor's testimony will necessarily be cumulative.  Regardless of who Defendant believes to be the "best witness," the Government may choose to have separate fact and expert witnesses.  The Government indicates that Nurse Taylor will testify specifically regarding D.R.'s SANE examination as a fact witness.  Dr. Beeson, on the other hand, will testify generally regarding child sexual abuse examinations as an expert witness.  While Nurse Taylor may be capable of testifying as both a fact and expert witness in this matter, it is within the Government's discretion to call separate witnesses.  The Court will now evaluate the admissibility of Dr. Beeson's testimony.

Admissibility of expert witness testimony is evaluated under Federal Rule of Evidence 702, which permits a qualified expert witness to testify and render an opinion if the proponent demonstrates to the Court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assur. Corp*., 11-CV-475, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)).  "First, the Court determines whether the expert is qualified by

knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1277-78 (W.D. Okla. 2018). "If so qualified, the Court must then determine whether the expert's opinion is reliable and relevant under the principles set forth in *Daubert* and *Kumho Tire*, in that it will assist the trier of fact." *Id*. at 1278. The party offering the expert testimony has the burden to prove that the expert is qualified and that his opinions are based in sound methodology and sufficient facts. *Dodge v. Cotter Corp*., 328 F.3d 1212, 1222 (10th Cir. 2003).

Defendant does not challenge Dr. Beeson's qualifications, and so the Court assumes without deciding that she is qualified to render the anticipated testimony. It focuses instead on the relevance and reliability determination.

Evidence or testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotations and citations omitted). "The 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002).

Regarding reliability, the Court must focus on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. An expert witness may rely on his experience in that field if the witness "explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis of the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's note (2000 amendment)). A trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152.

The Court finds that Dr. Beeson's testimony is both relevant and reliable. Defendant seems to concede the relevancy of Dr. Beeson's testimony, arguing instead that Nurse Taylor is the "best witness" to provide this testimony. As discussed above, the Government is entitled to develop its own trial strategy and call separate fact and expert witnesses. Further, based upon Dr. Beeson's extensive experience related to child sexual abuse examinations, the Court exercises its discretion to determine that Dr. Beeson's testimony, as set forth in the notice, is reliable.

The Court also finds that Dr. Beeson's testimony will be helpful to the trier of fact. While jurors may be generally aware that child sexual abuse occurs, most jurors lack technical knowledge regarding how child sexual abuse examinations are conducted and the possible scope of findings, the use of statements made during examinations, possible diagnoses, and the anatomy of the female genitalia. Additionally, several courts, including the Tenth Circuit, have concluded that expert testimony related to child sexual abuse is not within the common knowledge and is helpful to the jury. *See United States v. Charley*, 189 F.3d 1251, 1264 (10th Cir. 1999) (citing *United States v. Witted*, 11 F.3d 782, 785 (8th Cir. 1998)); *see also United States v. Koruh*, 210 F.3d 390 (unpublished), 2000 WL 342252, at *2 (10th Cir. 2000); *United States v. Perrault,* No. 17-02558, 2019 WL 1318341, at *3 (D.N.M. Mar. 22, 2019) (admitting psychologist's testimony in child sexual abuse case and finding that psychologist's knowledge and experience was "beyond the ken of the average juror" and would "help the trier of fact better understand the evidence presented"); *Reyna v. Roberts*, No. 10-3254, 2011 WL 4809798, at *8 (D. Kan. Oct. 11, 2011) (rejecting petitioner's argument that state trial court erred in admitting child therapist's expert testimony concerning sexual abuse and noting "the average juror is unfamiliar with how children respond in sexual abuse situations").

For these reasons, the Court finds that Dr. Beeson's expert witness testimony as described in the Government's notice [Dkt. No. 102] is ADMISSIBLE and Defendant's objection [Dkt. No. 106] is OVERRULED.

### b. Government's Objection to Professor Pearl Testimony and Motion in Limine Sufficiency of Blood Quantum Evidence [Dkt. No. 111]

On March 13, 2023, Defendant filed a notice of his intention to call Professor M. Alexander Pearl as an expert witness at trial. Dkt. No. 105. Defendant's notice indicates that Professor Pearl will "explain how a Certificate of Degree of Indian Blood for a Chickasaw Indian is generated by a showing of descent from a Chickasaw Indian listed on the Dawes Roll" and will "opine that the Dawes Roll was overinclusive, i.e., that it indicated that some individuals possessed a degree of Indian blood when they did not in fact possess such a bloodline." *Id*. at 2. In other words, Professor Pearl will opine that Defendant's enrollment as a citizen of the Chickasaw Nation is insufficient to establish that Defendant has some degree of Indian blood as required for the jury to find Defendant's Indian status.

Defendant's notice acknowledged that it did not include information regarding Professor Pearl's qualifications to testify as an expert, nor did it provide a complete statement of Professor Pearl's opinions or the bases thereof in compliance with Fed. R. Evid. 16. *Id*. at 2-3. However, simultaneously with the notice, Defendant filed an unopposed motion for leave to supplement Professor Pearl's expert notice by March 27, 2023, explaining that it was incomplete due to Professor Pearl's current illness. Dkt. No. 105. The Court granted Defendant's motion. Dkt. No. 112. On March 27, 2023, instead of filing a supplemental notice, Defendant filed an unopposed motion for an extension of time to file an expert notice. Dkt. No. 118. In this motion, Defendant explained that Professor Pearl was still too ill to complete an affidavit setting forth the basis of his opinion in compliance with Fed. R. Evid. 16, and, therefore, Defendant had identified another,

unnamed expert witness who could testify as to the issue of Indian status in Professor Pearl's place. *Id*. at 1-2. The Court granted Defendant's motion allowing Defendant until April 10, 2023 to file his new expert notice. Dkt. No. 120. No supplemental expert notice for Professor Pearl, nor any new notice for an expert on the topic of Indian status was ever filed. Regardless, the Government filed an objection to Defendant's expert notice for Professor Pearl and a motion in limine regarding the presentation of evidence that the Dawes Rolls are overinclusive. Dkt. No. 111. The Court will address the Government's objection and motion.

First, the Government argues that Professor Pearl is not qualified to testify as an expert. *Id*. at 4. As the proponent of Professor Pearl's testimony, Defendant bears the burden of establishing that the proposed expert testimony is admissible, including that Professor Pearl is so qualified to testify. *United States v. Nacchio*, 519 F.3d 1140, 1171–72 (10th Cir. 2008); *see also Ralston v. Smith & Nephew Richards, Inc*., 275 F.3d 965, 970 (10th Cir. 2001). Defendant's notice provides limited information regarding Professor Pearl's qualifications, stating that he "is a professor of law at the University of Oklahoma College of Law . . . , a nationally recognized scholar in the fields of Indigenous legal/social issues and statutory interpretation . . . , [and] an enrolled citizen of the Chickasaw [N]ation." Dkt. No. 105 at 2. Defendant also provides a web address for Professor Pearl's information on the University of Oklahoma College of Law faculty directory. The Court finds that this is insufficient and Defendant has failed to meet his burden. In fact, Defendant in effect conceded that he had not met his burden when he indicated that he would file a supplemental notice. *See* Dkt. No. 105 at 2-3. Because no such supplemental notice was filed, the Court cannot properly determine whether Professor Pearl is qualified to testify as an

expert.[6]  The Court's inquiry ends here.  *See Lippe*, 287 F. Supp. 3d 1271, 1277-78 (W.D. Okla. 2018) (holding that a *Daubert* analysis is only required once the Court determines an expert is qualified by knowledge, skill, experience, training or education to render an expert opinion).  The Court finds that Professor Pearl's expert witness testimony as described in Defendant's notice [Dkt. No. 105] is INADMISSIBLE and the Government's objection [Dkt. No. 111] is SUSTAINED.

While the Court did not reach the substance of Professor Pearl's testimony, the Government nonetheless asks the Court to preclude the defense from introducing evidence, in any form, related to the sufficiency of the Dawes Rolls in determining Defendant's tribal membership. Dkt. No. 111 at 7-10.  Specifically, the Government argues that this evidence is irrelevant and contrary to the law.  The Court agrees.

The issue of whether Defendant is an Indian is an issue of fact to be determined by the jury. To find that Defendant is an Indian, the jury must make factual findings that Defendant "(1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government." *United States v. Prentiss*, 273 F.3d 1277, 1280 (10th Cir. 2001) (internal quotations and citations omitted).  The Court will instruct the jury consistent with Tenth Circuit law that the first prong—whether Defendant has some Indian blood—is dispositive if Defendant is an enrolled tribal member.  *See United States v. Nowlin*, 555 F. App'x 820, 823 (10th Cir. 2014) (unpublished) (citing *United States v. Stymiest*, 581 F.3d 759, 763 (8th Cir. 2009)).  Any argument regarding the sufficiency or validity of Defendant's status as an enrolled member of the Chickasaw Nation is

---

[6]  Additionally, the Court notes that the deadline to file a notice for a new expert notice as originally granted by the Court [Dkt. No. 120], as well as the deadlines established in subsequent amended scheduling orders [Dkt. Nos. 129, 141, 149], have passed.  Therefore, the Court cannot and will not determine whether any other expert is qualified to testify as to the issue of Indian status.

inappropriate and should be excluded.  Therefore, the Government's motion in limine [Dkt. No. 111] is GRANTED and Defendant is precluded from introducing evidence related to the sufficiency of the Dawes Rolls in determining tribal membership.

## CONCLUSION

IT IS THEREFORE ORDERED that the Government's objections to Defendant's Fed. R. Evid. 608 and 609 Notices at Dkt. No. 94 are SUSTAINED.  The evidence described in Defendant's Notice of Intent to Impeach Government Witness S.R., Pursuant to Fed. R. Evid. 609 [Dkt. No. 90] and Notice of Intent to Cross-Examine Government Witness S.R. Pursuant to Fed. R. Evid. 608(b)(1) [Dkt. No. 91] is INADMISSIBLE.  Further, the Government's rehabilitation request at Dkt. No. 94 is DENIED as moot.

IT IS FURTHER ORDERED that the Government's objection to Defendant's expert witness notice for Professor Pearl at Dkt. No. 111 is SUSTAINED and the Government's motion in limine to preclude evidence of sufficiently of blood quantum evidence at Dkt. No. 111 is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion in Limine at Dkt. No. 107 is GRANTED as set forth in this Order.

IT IS FURTHER ORDERED that Defendant's Motion in Limine at Dkt. No. 108 is DENIED as set forth in this Order.

IT IS FURTHER ORDERED that Defendant's Motion in Limine at Dkt. No. 109 is DENIED as set forth in this Order.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Indictment at Dkt. No. 110 is DENIED as set forth in this Order.

IT IS FURTHER ORDERED THAT Defendant's Objection to the Government's Expert Witness Testimony at Dkt. No. 106 is OVERRULED as set forth in this Order.

Dated this 19th day of January 2024.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE